

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | **(UNDER SEAL)** | |
| ) | | |
| v.   ) | CRIMINAL NO. 1:11-CR-560 | |
| ) | | |
| ) | Count 1 - | 21 U.S.C. §§ 959(a), 960, 963 (Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending that it will be Unlawfully Imported into the United States) |
| AYMAN JOUMAA, ) | | |
| also known as "Junior," ) | | |
| ) | | |
| Defendant.   ) | | |
| ) | | |
| ) | | |
| ) | Count 2 - | 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) |
| ) | | |
| | Forfeiture - | 18 USC § 853, 970 (Criminal Forfeiture) |

INDICTMENT

NOVEMBER 2011 TERM - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

Background

At all times relevant to this Indictment:

1. On or about January 26, 2011, the United States Department of the Treasury's Office of Foreign Asset Control (OFAC) designated the defendant, along with other individuals and entities, as Specially Designated Narcotics Traffickers pursuant to the Foreign Narcotics Kingpin Designation Act.

2. This designation by OFAC was based on, among other things, the defendant's coordination of the transportation, distribution, and sale of multi-ton shipments of cocaine from

South America and the laundering of hundreds of millions of dollars of proceeds from the sale of cocaine in Europe and the Middle East.

3. The defendant's coordination of money laundering activities occurred in the United States, Lebanon, Benin, Panama, Colombia, the Democratic of Congo, and elsewhere.

4. Los Zetas Mexican drug cartel is a violent drug trafficking organization that controls drug smuggling corridors from Mexico to the United States, often through massacre attacks, including the 2011 massacre at the Monterey Casino in Nuevo Leon, Mexico.

5. Colombia is responsible for the production of 90% of the cocaine that is imported into the United States. The cocaine that leaves Colombia is sent along the Central American corridor to Guatemala, Honduras, and Mexico, for eventual shipment to the United States.

6. The laundering of drug related proceeds is a critical step in a conspiracy to distribute cocaine for unlawful importation into the United States. The laundering of drug proceeds allows foreign drug traffickers to remain undetected so that they can continue to distribute cocaine and other drugs for importation into the United States. The laundered drug proceeds that are returned to the drug traffickers in Colombia and other countries allow the drug trafficking conspiracy to continue by funding further drug production and distribution aimed at importing future drug shipments to the United States.

## COUNT 1

(Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending that it would be Unlawfully Imported into the United States)

THE GRAND JURY FURTHER CHARGES THAT:

From in or about 2004 and continuing thereafter up to and including the date of the filing of this Indictment, the exact dates being unknown to the Grand Jury, in Colombia, Lebanon, Panama, and elsewhere, the defendant, AYMAN JOUMAA, also known as "Junior," and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to commit the following offense against the United States: to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a).

The allegations in paragraphs 1 through 6 of this Indictment are incorporated herein by reference.

### Manners and Means of the Conspiracy

The defendant and his co-conspirators used the following manners and means, among others, in furtherance of the conspiracy:

7. It was part of the conspiracy that the defendant and his co-conspirators coordinated the shipment of at least tens of thousands of kilograms of cocaine from Colombia, through Central America and Mexico, to the United States, including but not limited to 85,000 kilograms of cocaine shipped from Colombia for sale to Los Zetas drug cartel from in and around

2005 through in and around 2007.

8. It was further a part of the conspiracy that the defendant and his co-conspirators laundered at least hundreds of millions of dollars in proceeds of illegal drug sales in the United States and elsewhere, including but not limited to an amount in excess of $250 million in drug related proceeds representing cocaine sales in the United States, Mexico, Central America, and Europe, which the defendant laundered from in and around 1997 through in and around September 2010.

9. It was further a part of the conspiracy that the defendant and others, known and unknown to the grand jury, coordinated the shipment of multi-thousand kilogram quantities of cocaine from Colombia to Guatemala, Honduras, and Mexico for sale to Los Zetas drug cartel in Mexico. The ultimate destination for this cocaine was the United States.

10. It was further part of the conspiracy that the defendant would arrange for the laundering of drug-related proceeds from Mexico, Europe (predominantly Spain), and West Africa to Colombia. The defendant's co-conspirators would contact the defendant via email, Blackberry PIN, or telephone in order to arrange for the delivery of drug related proceeds to members of the defendant's organization. The defendant and members of his organization would then launder these proceeds and return them to the cocaine suppliers in Colombia. The defendant would charge a fee of between 8% and 14% for the laundering of these proceeds. These drug proceeds received by the defendant and members of his organization were in the form of United States currency and represented proceeds from the sale of cocaine in the United States.

11. It was further part of the conspiracy that the defendant and his co-conspirators

would receive bulk deliveries of United States currency. These deliveries of bulk cash, which represented proceeds of the sale of cocaine in the United States, were made in Mexico City, Mexico. Once the drug proceeds were delivered to the defendant and his co-conspirators, the laundered proceeds would be paid out in Venezuela or Colombia. Payment in Venezuela was in the form of Bolivars. Payment in Colombia was in the form of Colombian pesos. The defendant would launder these funds and make payment within 1 to 5 days from the date of delivery of the United States currency in Mexico. During the course of the conspiracy, the defendant typically picked up between $2 and 4 million at a time in Mexico City.

12. It was further part of the conspiracy that the defendant and his co-conspirators would pick up drug-related proceeds in Mexico, Europe, and West Africa. Further, the defendant and his co-conspirators would pick up United States currency in Mexico City, Mexico. The defendant would then launder these proceeds and repay them to drug traffickers in Colombia and Venezuela. The United States currency laundered by the defendant represented the proceeds of the sale of cocaine shipped from Colombia to Guatemala, Honduras, and Mexico, for sale to the Los Zetas trafficking organization in Mexico. The ultimate destination of the cocaine shipped to Los Zetas drug cartel was the United States.

(In violation of Title 21, United States Code, Section 963).

## COUNT 2

(Conspiracy to Commit Money Laundering)

THE GRAND JURY FURTHER CHARGES THAT:

From in or about 2004 and continuing thereafter up to and including the date of the filing of this Indictment, in the United States, Colombia, Lebanon, Panama, and elsewhere, the defendant, AYMAN JOUMAA, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to conduct financial transactions involving the proceeds of a specified unlawful activity, to wit, the manufacture, importation, sale, and distribution of a controlled substance, which financial transactions involving interstate and international commerce were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, to wit, the manufacture, importation, sale, and distribution of a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(I).

The allegations in paragraphs 1 through 12 of this Indictment are incorporated herein by reference.

(In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (h)).

## FORFEITURE NOTICE

The defendant, if convicted of the violation alleged in Count 1 of this Indictment, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853(a), any property constituting, or derived from, any proceeds each defendant obtained, directly or indirectly, as the result of such violation; and any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. This property includes, but is not limited to $850,000,000 in United States currency, representing proceeds that the defendant obtained in the course of the conspiracy alleged in Count 1 of this Indictment.

If convicted of the money laundering conspiracy charged in Count 2 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to $850,000,000 in United States currency, representing proceeds that the defendant obtained in the course of the conspiracy alleged in Count 2 of this Indictment.

(Pursuant to Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(1)).

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
Foreperson

Neil H. MacBride
United States Attorney

By: _____
Michael P. Ben'Ary
Assistant United States Attorney

7